UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD KELLY, #526389,

                  Petitioner,                       Case No. 12-cv-11005

v.                                                Honorable Thomas L. Ludington

KENNETH ROMANOWSKI,

                  Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO
PROCEED IN FORMA PAUPERIS ON APPEAL**

Michigan prisoner Bernard Kelly ("Petitioner") seeks the issuance of a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of two counts of assault with

intent to commit murder, MICH. COMP. LAWS § 750.83, and one count of possession of a firearm

during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the

Wayne County Circuit Court. He was sentenced to concurrent terms of 18 years and 9 months to

30 years imprisonment on the assault convictions and a consecutive term of two years

imprisonment on the felony firearm conviction in 2006. In his petition, he raises 30 claims

concerning his right to counsel of choice; the bindover decision and the reinstatement of charges;

the admission of other acts evidence; the conduct of the prosecutor; his federal and state speedy

trial rights; pre-arrest delay; his right to be present at trial; the suppression of evidence; the

effectiveness of trial and appellate counsel; the sufficiency of the appellate record; his self-

representation rights; the denial of a new trial motion; and cumulative error. Petitioner's claims

lack merit and his petition will be denied. A certificate of appealability and leave to proceed *in forma pauperis* on appeal will also be denied.

## I.

Petitioner's convictions arise from his shooting assault upon his toddler daughter and her mother at the woman's home in Detroit, Michigan on February 19, 2002. The Court adopts the statement of facts set forth by the Michigan Court of Appeals, which is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> The complainant, Charity Smith, met defendant in 1999. Smith and defendant had a casual sexual relationship, and Smith became pregnant. Defendant repeatedly expressed his desire to not be a father. He asked Smith to have an abortion, told her that he hoped the baby would die in utero, and threatened to make her life miserable if she gave birth to the child. Defendant also threatened to kill both Smith and their child. Bravely, Smith chose to have the baby. She gave birth to their daughter, Amorie Smith, on April 14, 2000.

> After Amorie's birth, Smith filed a petition to obtain child support. Genetic testing established that defendant was Amorie's father. Defendant signed an affidavit of parentage and was ordered to pay child support. The payments were deducted directly from his paychecks.

> On February 19, 2002, defendant called Smith and threatened to kill her and Amorie because he did not want to pay child support. Smith ended the call, but defendant called back and screamed that he hoped that she and Amorie would die. Smith immediately called the police to report the incident and was told that an officer would contact her the following day. Approximately 25 minutes later, Smith was sitting on the floor of her bedroom, talking on the phone and watching Amorie play with the window blinds. Smith heard two taps and told Amorie to get away from the window. As Amorie moved away from the window, a gun was fired through the window and into the room. Smith, who used her body to shield Amorie from the gunshots, was hit seven times. Smith could not see who fired the shots. She managed to call the police and hid in the bathroom with Amorie until they arrived. The shooter went to the front door and tried to kick it down, but fled when he heard police sirens. After this incident, Smith had no further contact with defendant.

> Officers investigating the shooting recovered four .25 caliber shell casings outside Smith's bedroom window. Defendant's friend, Ivan Stepney, testified that

defendant possessed a .25 caliber handgun. Stepney also claimed that defendant had told him on more than one occasion that he did not understand why a woman would have a child knowing that the father would not be in that child's life.

*People v. Kelly*, No. 269918, 2007 WL 2118799, *1-2 (Mich. Ct. App. July 24, 2007) (unpublished). At the close of trial, the jury found Petitioner guilty of the charged offenses and the trial court sentenced him to the terms of imprisonment previously set forth.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the following claims:

I.      He was denied his counsel of choice.

II.     He was denied due process when the state circuit court reversed the state district court's dismissal of the charges and bound him over for trial.

III.    He was denied due process when the charges against him were reinstated after the case had been dismissed.

IV.     He was denied due process by the admission into evidence of his prior, uncharged crimes.

V.      He was denied due process and a fair trial when he was denied the right to a speedy trial and the right to be tried within 180 days of incarceration.

VI.     He was denied due process when the prosecutor vouched for the victim's testimony.

VII.    He was denied due process when the prosecutor poisoned the entire trial with character assassination when attempting to demonstrate improper motive.

VIII.   He was denied due process when he was not afforded a second preliminary examination in order to properly inform him of the nature of the accusations against him after a prior dismissal of the charges.

IX.     He was denied due process when the court failed to re-arraign him on the information.

X.      He was denied due process and a fair trial by the 2½ year delay in arrest.

XI.     He was denied due process when the prosecutor improperly vouched for the credibility of the victim.

- 3 -

XII.    He was denied due process when the court denied him the right to be
        present at trial and by his forced absence at a critical stage of trial.

XIII.   He was denied due process when the prosecutor suppressed evidence
        favorable to the defense.

XIV.    He was denied his right to the effective assistance of counsel for numerous
        reasons.

The Michigan Court of Appeals denied relief on those claims and affirmed his convictions and

sentences. *Id*. Petitioner filed an application for leave to appeal with the Michigan Supreme

Court, which was denied in a standard order. *People v. Kelly*, 480 Mich. 991, 742 N.W.2d 123

(2007).

Petitioner subsequently filed a motion for relief from judgment with the state trial court

raising the following claims:

I.      He was denied his right to due process when the state circuit court failed
        to provide an adequate pretrial/trial record of occurrences which precluded
        the possibility of full and fair appellate review.

II.     He was denied the effective assistance of appellate counsel when appellate
        counsel failed to provide the appellate court with sufficient facts to
        support his claims, failed to provide him with transcripts, and failed to
        raise the issues raised in his motion for relief from judgment.

III.    He was denied his rights to procedural due process and the effectiveness
        of trial and appellate counsel when he was brought to trial without being
        arraigned on the information in circuit court to properly inform him of the
        charges against him.

IV.     He was denied due process and the effective assistance of counsel when
        trial counsel failed to move for a directed verdict at trial and appellate
        counsel failed to challenge the sufficiency of the evidence on direct
        appeal.

V.      He was denied due process when the trial court failed to advise him of the
        risks involved in self representation, the minimum/maximum prison
        sentence, the charged offense, the opportunity to consult with counsel after
        a request for substitute counsel was denied, and the continued right to a
        lawyer's assistance.

- 4 -

VI.     He was denied due process when the trial court abused its discretion by failing to follow prescribed procedure in making the determination as to whether there was a breakdown in the attorney client relationship that required substitution of defense counsel.

VII.    He was denied his right to counsel and due process when the court removed him from the courtroom and failed to provide him with access to the court or defense counsel.

VIII.   The trial court committed constitutional error when the decision was made to proceed in his absence without providing him with a sufficient opportunity to reclaim the right to be present and testify.

IX.     He was denied due process when the prosecutor failed to investigate and present attainable facts and evidence showing the whole transaction at trial.

X.      He was denied his right to the effective assistance of counsel where counsel failed to object to improper comments or request curative instructions, failed to object to a 14-day rule violation, failed to investigate the circumstances of the dismissal and reinstatement of the charges or to request an interlocutory appeal, and failed to object to the introduction of photographic lineup evidence used to support prior bad acts.

XI.     He was denied due process and the effective assistance of counsel when defense counsel failed to obtain and investigate police reports filed by the complainant against him prior to the shooting.

XII.    He was denied the effective assistance of trial counsel when counsel failed to move the court for a continuance to locate/interview a new witness discovered at trial.

XIII.   He was denied due process and the effective assistance of counsel when defense counsel failed to investigate the circumstances involving the intent of the perpetrator.

XIV.    He was denied due process and the effective assistance of counsel when counsel failed to move the court to dismiss the charge against him due to prosecutorial vindictiveness.

XV.     He was denied due process when the trial court erred by denying his motion for new trial without a *Ginther* hearing.

XVI.    The cumulative effect of errors committed at trial denied him his constitutional right to due process.

The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(2) and (3). *People v. Kelly*, No. 05-012153-01 (Wayne Co. Cir. Ct. Feb. 10, 2009). The trial court also denied Petitioner's motions for disqualification and reconsideration. *People v. Kelly*, No. 04-012153-01 (Wayne Co. Cir. Ct. June 4, 2009). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was ultimately denied "for failure to establish entitlement to relief under MCR 6.508(D)." *People v. Kelly*, No. 298250 (Mich. Ct. App. Jan. 5, 2011). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court which was similarly denied. *People v. Kelly*, 490 Mich. 857, 802 N.W.2d 347 (2011). The court also denied reconsideration. *People v. Kelly*, 490 Mich. 975, 806 N.W.2d 309 (2011).

Petitioner thereafter submitted his federal habeas petition, raising the same claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are procedurally defaulted. Petitioner has filed a reply to that answer.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review for federal habeas cases brought by state prisoners. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

- 6 -

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. In order for a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision "must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7). A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. It also "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Additionally, while the requirements of "clearly established law" are determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

- 8 -

## III.

As an initial matter, Respondent contends that several of Petitioner's claims are barred by procedural default. Respondent contends that certain claims are defaulted because Petitioner failed to make proper objections at trial and the Michigan Court of Appeals relied upon that failure to deny relief on direct appeal and that other claims are defaulted because Petitioner failed to raise those claims on direct appeal and the Michigan courts denied relief on collateral review based upon Michigan Court Rule 6.508(D). On habeas review, however, federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issues are complex and the substantive claims are more readily decided on the merits. Accordingly, the Court need not address the procedural default issues and shall proceed to the merits of Petitioner's claims.

## IV.

## A.

Petitioner first asserts that he is entitled to habeas relief because he was denied his right to counsel of choice and the trial court did not follow proper procedures in denying his request for substitute counsel (Habeas Claims I, XX). Petitioner raised this claim on direct appeal and again on collateral review in the state courts. On direct appeal, the Michigan Court of Appeals ruled that the claim lacked merit and denied relief. The court explained:

First, defendant argues that he was denied due process and his right to counsel of his choice when the trial court refused his request for substitute counsel. We disagree. We review the trial court's decision regarding defendant's right to the counsel of his choice for an abuse of discretion. *People v. Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003). We defer to the trial court's judgment when the trial court chooses an outcome that falls within the range of reasonable and principled outcomes. *People v. Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A strong presumption exists that defendant received effective assistance of counsel, and defendant bears the burden of proving that his counsel's actions did not constitute sound trial strategy. *People v. Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997), citing *Strickland v. Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Both the United States and Michigan Constitutions guarantee the right to effective assistance of counsel in order to protect a criminal defendant's right to a fair trial. U.S. CONST. amend. VI; Const. 1963, art 1, § 20; *Strickland, supra* at 684. However, an indigent defendant is not entitled to choose his appointed counsel, and the decision to substitute counsel is within the trial court's discretion. *People v. Russell*, 471 Mich 182, 192 n 25; 684 NW2d 745 (2004).

"Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." [*People v. Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001), quoting *People v. Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).]

There is no indication that defendant had good cause to justify substitution of counsel, and there is no showing that counsel did not zealously advocate on his behalf. On the first day of trial, before the proceedings began, defense counsel indicated to the judge that although she was prepared for trial, defendant was not happy with her representation. However, defense counsel noted that she met with defendant, represented him during the preliminary examination and pretrial proceedings, interviewed the witness that defendant identified and determined that this potential witness's testimony was irrelevant to the case, and subpoenaed telephone records for the telephone numbers that defendant gave her, only to find that the records no longer existed. Despite receiving this representation, defendant argued that he would not receive a fair trial if he continued to be represented by his present attorney, and that he did not have the opportunity to discuss picking a jury with his attorney. The trial court, he claimed, should have granted him an extension. However, matters of professional judgment and trial strategy are entrusted to the attorney. *Traylor, supra* at 463. Defendant is not entitled to a new attorney merely because his trial attorney failed to discuss jury selection with him. Further, defendant waited until the day of trial to raise this objection. A substitution of counsel at this point in the proceedings would have required delaying proceedings and rescheduling the trial, unreasonably disrupting the

> judicial process. Accordingly, the trial court did not abuse its discretion when it refused to substitute defendant's counsel on the day of trial.

*Kelly*, 2007 WL 2118799 at *1-2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Sixth Amendment to the United States Constitution provides for the right to counsel. U.S. CONST. amend. VI. The right to counsel encompasses the right to counsel of choice, but that right is generally cognizable only to the extent that a defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). An indigent defendant who is dissatisfied with appointed counsel must show "good cause" to warrant the substitution of counsel because an indigent defendant does not have an absolute right to counsel of choice. *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). The decision regarding whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004).

The United States Court of Appeals for the Sixth Circuit has cited three factors to consider when evaluating a trial court's denial of a request for substitute counsel: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and the defendant is so great that it results in a total lack of communication preventing an adequate defense. *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (citing *Iles*, 906 F.2d at 1131, n.8). These factors are balanced with the public's interest in the prompt and efficient administration of justice. *Iles*, 906 F.2d at 1131, n.8 (citing *Wilson*, 761 F.2d at 280); *see also United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

- 11 -

Petitioner has not shown good cause for the substitution of appointed counsel under the multi-factor test employed by the Sixth Circuit. The first factor, the timeliness of the request, weighs against Petitioner because his request on the first day of trial was untimely. *See Trujillo*, 376 F.3d at 606 (request for substitute counsel made three days before trial was untimely); *see also United States v. Chambers*, 441 F.3d 438, 447 (6th Cir. 2006) (request for substitute counsel made one and a half months before trial was untimely). The second factor, the adequacy of the court's inquiry, weighs in Petitioner's favor to some degree because the trial court did not allow him to fully explain his concerns about trial counsel, but against Petitioner to the extent that the trial court discussed the issue with trial counsel and confirmed that counsel was ready and able to represent Petitioner at trial. The third factor, whether a conflict between trial counsel and Petitioner was so great that it resulted in a total lack of communication preventing an adequate defense, weighs against Petitioner because he fails to show that there was any such conflict. Rather, the record indicates that counsel investigated matters requested by Petitioner and that they were able to communicate and work together well enough to present an adequate defense at trial. While Petitioner asserts that trial counsel did not consult with him about jury selection and/or was ineffective in certain respects, he has not substantiated those allegations—and neither the state courts nor this Court have found the underlying ineffective assistance of counsel claims to be meritorious. *See* discussion *infra*. The last factor, the public's interest in the prompt and efficient administration of justice, also weighs against Petitioner because the substitution of counsel would have delayed the trial and resulted in additional costs to the parties and the court. Petitioner fails to establish that substitute counsel was warranted. More importantly, for purposes of federal habeas review, he fails to show that the Michigan Court of Appeals' ruling on this issue was unreasonable. Habeas relief is not warranted on this claim.

- 12 -

**B.**

Petitioner next asserts that he is entitled to habeas relief because he was denied due process when the state circuit court reversed the state district court's refusal to bind him over for trial and reinstated the charges against him without conducting a second arraignment or preliminary examination (Habeas Claims II, III, VIII, IX). Petitioner raised these claims on direct appeal and the Michigan Court of Appeals denied relief. As to the bind-over decision, the court found that Petitioner had failed to preserve the issue and that the claim lacked merit because there was probable cause to bind him over for trial. *Kelly*, 2007 WL 2118799 at *2-4. As to the reinstatement of charges, the court found that Petitioner was not entitled to another preliminary examination under state law and that he had not shown that the reinstatement of the charges constituted harassment or violated his due process rights because the prosecutor properly appealed the state district court's bind-over ruling to the state circuit court. *Id*. at *4. The court further found that Petitioner was appropriately given arraignments on the warrant and the information and given a preliminary examination on the charges so as to satisfy due process. *Id*. at *10.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has held that the Federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. *Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n.26 (1975). Accordingly, the bind-over decision constitutes a state law issue which does not implicate a federal constitutional right and is not subject to review in a federal habeas proceeding. *See Schacks v. Tessmer*, No. 00-1062, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the

evidence challenge moot); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on state prisoner's claim that there was insufficient evidence to bind him over for trial); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (ruling that habeas relief is not available for perceived violations of state law).[1]

Petitioner fails to establish a violation of his constitutional rights. There is no evidence that the bind-over decision and/or the reinstatement of charges was the product of harassment or other impropriety. Additionally, as explained by the Michigan Court of Appeals, Petitioner was given sufficient notice of the charges against him and accorded all of the process he was due during the pre-trial proceedings. Habeas relief is not warranted on these claims.

## C.

Petitioner asserts that he is entitled to habeas relief due to the admission of other acts evidence—his interactions with another woman with whom he had a child and the day care shooting in which he killed that three-year-old daughter and injured her day care provider (Habeas Claim IV). The Michigan Court of Appeals denied relief on this claim, finding that the evidence was properly admitted under state law as evidence of a common plan, scheme, or system, as evidence of motive, and as evidence of Petitioner's identity as the shooter. *Kelly*, 2007 WL 2118799 at *5-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief. *Estelle v.*

---

[1] Even under Michigan law, any error in the preliminary examination proceeding is considered harmless once a valid conviction has been obtained.  *See People v. Hall*, 435 Mich. 599, 610-12, 460 N.W.2d 520 (1990).

- 14 -

*McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan law, he merely alleges a state law violation which does not justify federal habeas relief. *Bey*, 500 F.3d at 519. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of other acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief. He has not shown that the admission of the other acts evidence rendered his trial fundamentally

unfair. The other acts evidence was relevant and admissible on the issue of common plan, scheme, or system, as well as motive and identity under Michigan Rule of Evidence 404(b). The prosecution did not make an improper propensity argument at trial and the trial court instructed the jury on the proper consideration of the evidence. Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to establish that the admission of the other acts evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair. Habeas relief is not warranted.

## D.

Petitioner next asserts that he is entitled to habeas relief due to prosecutorial misconduct. In particular, he claims that the prosecutor denigrated his character and vouched for the victim (Habeas Claims VI, VII, XI). Petitioner raised these claims on direct appeal. The Michigan Court of Appeals found that Petitioner failed to object at trial and ruled that he was not entitled to relief on plain error review because the claims lacked merit. The court explained:

> Defendant argues that the prosecutor committed misconduct by assassinating defendant's character and by vouching for Smith's credibility. We disagree. "Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v. Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, defendant failed to preserve this issue at trial because he did not challenge the prosecutor's remarks, depriving the trial court of the opportunity to cure the error. *People v. Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). We review unpreserved claims of constitutional error for plain error affecting defendant's substantial rights. *Carines, supra* at 763-764.
>
> "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' They are 'free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case.'" *People v. Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citations omitted). "We review claims of prosecutorial misconduct case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v.*

- 16 -

*Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). A prosecutor may fairly respond to an issue or argument raised by the defendant. *People v. Fields*, 450 Mich 94, 110-111; 538 NW2d 356 (1995).

In her opening statement, the prosecutor noted that defendant had two daughters, did not want to support either daughter financially, and was upset that child support payments were taken directly from his paychecks. He ranted to the mother of each daughter regarding the paycheck deductions and threatened to kill each daughter shortly before each shooting. In her closing argument, the prosecutor noted the close timing in each case between defendant's conversations with each mother regarding child support and the respective shootings. The prosecutor argued that defendant was motivated to commit each crime because he did not want to pay child support by having deductions taken from his paycheck. The prosecutor's arguments were supported by the evidence presented at trial and, therefore, did not constitute misconduct.

Defendant also challenges the propriety of the prosecutor's questions concerning his anger regarding his required child support payments. We review a prosecutor's line of questioning to determine whether the prosecutor elicited the challenged testimony in a good-faith effort to admit evidence. *People v. Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Reversal is warranted if improper questioning resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v. Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

The prosecutor's questions that elicited testimony regarding defendant's anger over the child support payments coming directly from his paychecks were relevant to the case. Again, "relevant evidence is any fact that is of consequence to the determination of the action." *People v. Fisher*, 449 Mich. 441, 452; 537 NW2d 577 (1995). *See* MRE 401. The elicited testimony indicated that defendant had a motive for wanting to kill his child, specifically, to eliminate the financial burden of supporting her. Further, the prosecutor's argument that this was defendant's motive may reasonably be inferred from the evidence presented.

Defendant also contends that the prosecutor impermissibly vouched for Smith's credibility. However, defense counsel attacked Smith's credibility and the truthfulness of her testimony during defendant's closing argument. The prosecutor fairly responded to this attack in her rebuttal argument, stating that if Smith were a liar, she would have said that she saw defendant shoot at her and Amorie. Considering the surrounding circumstances, the prosecutor's remarks were not improper.

The prosecutor also summarized how the evidence presented at trial supported Smith's account of the events surrounding the shooting. A prosecutor may argue that a witness is or is not worthy of belief based on the facts. *People v. Launsbury*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Accordingly, the

- 17 -

prosecutor's statement that Smith's testimony was truthful does not constitute misconduct.

Regardless, the trial court properly instructed the jury that the prosecutor's questions and arguments were not evidence, that the jury alone was the finder of facts, including credibility determinations, and that it must not let sympathy or prejudice influence its decision. Any possible error was dispelled by the trial court's instruction. *See Bahoda, supra* at 281. Accordingly, the prosecutor's questions and remarks did not deprive defendant of a fair trial.

*Kelly*, 2007 WL 2118799 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner fails to establish that the prosecutor's conduct was improper and/or that it rendered his trial fundamentally unfair. Petitioner asserts that the prosecutor "assassinated" his character. It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel, *see, e.g.*, *United States v. Young*, 470 U.S. 1, 9 (1985), but a prosecutor may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and argue the facts supporting the prosecution's theory and the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The prosecutor's comments about Petitioner's conduct with respect to his daughters and their mothers were

- 18 -

relevant to the charged offenses and were supported by the evidence presented at trial. The prosecutor's questions about Petitioner's anger over child support payments were relevant to his motive for the crime. The prosecutor did not improperly denigrate Petitioner or attack his character.

Petitioner also asserts that the prosecutor vouched for Charity Smith's credibility. It is well-settled that it is improper for a prosecutor to express his or her own personal opinions as to a witness's credibility. *Young*, 470 U.S. at 9-10; *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they "can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant" and because the prosecutor's opinion "may induce the jury to trust the government's judgment rather than its own[.]" *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). The prosecutor's remarks about Charity Smith's credibility were proper because Smith's credibility was attacked by the defense at trial. Moreover, the prosecutor argued that Smith's testimony was supported by the other evidence at trial. It is well-established that a prosecutor may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000).

Additionally, to the extent that any of the prosecutor's remarks or questions were improper, they were not pervasive or misleading so as to render the trial fundamentally unfair. Any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them not to let sympathy or prejudice influence their decision. *See Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions.

*See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Habeas relief is not warranted on such a basis.

**E.**

Petitioner asserts that he is entitled to habeas relief because he was denied his speedy trial rights under state and federal law (Habeas Claim V). Petitioner raised these issues on direct appeal. The Michigan Court of Appeals denied relief, stating as follows:

> Next, defendant claims that he was denied due process by the delay between his arraignment and trial. We disagree. To preserve the issue for appeal, a defendant must make a formal demand for a speedy trial on the record. *People v. Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). Because defendant failed to make the necessary formal demand, this issue is unpreserved, and we review it for plain error affecting defendant's substantial rights. *Carines, supra* at 763-764.
>
> Criminal defendants are guaranteed the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v. Cleveland Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006). Prejudice is presumed if the delay is 18 months or more. *Id*. at 262. This presumption also triggers an inquiry into the other factors and shifts the burden to the prosecution to show that no injury resulted from the delay. *Id*. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Id*. at 261. "A formal charge against, or restraint of, the accused is necessary to call the right to speedy trial into play." *People v. Rosengren*, 159 Mich App 492, 506 n 16; 407 NW2d 391 (1987), citing *United States v. Marion*, 404 US 307; 92 S Ct 455; 30 L Ed 2d 468 (1971). "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Cleveland Williams, supra* at 261.
>
> A defendant may suffer from two types of prejudice: prejudice to his person and prejudice to the defense. *Cleveland Williams, supra* at 264. "[T]he most serious inquiry is whether the delay has impaired defendant's defense." Rosengren, supra at 508. General allegations of prejudice, such as loss of memory, financial burden, or anxiety, are insufficient to establish that a defendant was denied his right to a

- 20 -

speedy trial. *People v. Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). Delays inherent in the court system, such as docket congestion, although technically attributable to the prosecution, "are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. at 460, quoting *People v. Wickham*, 200 Mich App 106, 111; 503 NW2d 701 (1993). The delay between a dismissal without prejudice and the reinstatement of the charge is not attributed to either party because there is no charge pending against a defendant during that time. *Wickham, supra* at 111. The defendant is charged with the time spent to adjudicate defense motions. *Gilmore, supra* at 461. A defendant's failure to timely assert his right weighs against a finding that he was denied a speedy trial. *Wickham, supra* at 112.

Defendant was arrested for the present offenses on March 1, 2005. His first preliminary examination was scheduled for March 14, 2005, but was postponed until March 17, 2005, at defense counsel's request so she could meet with defendant to review discovery. At the conclusion of the preliminary examination, the district court judge decided that there was insufficient evidence to link defendant to the February 19, 2002, shooting and refused to bind defendant over for trial. The case was dismissed without prejudice.

The prosecutor then appealed the district court's decision before the circuit court. The circuit court reinstated the charges and, on remand, the prosecutor again moved to bind defendant over on these charges. On November, 29, 2005, pursuant to the order from the circuit court, the district court bound defendant over for trial on the present charges and scheduled the arraignment for December 6, 2005. The trial began on March 13, 2006.

No presumption of prejudice exists in this case because the time between defendant's arrest and the start of the trial was just over 12 months, well within the 18-month presumption period. *See Cleveland Williams, supra* at 262. Therefore, defendant must establish prejudice. *Cain, supra* at 112. Defendant concedes that he did not suffer personal prejudice from incarceration before trial because he was already incarcerated for a prior conviction. Defendant also does not allege that he suffered prejudice in his defense. Defendant merely contends that he suffered prejudice in the form of anxiety and concern. "[A]nxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *Gilmore, supra* at 462. Accordingly, defendant has failed to meet his burden to show that he was denied his right to a speedy trial.

Defendant also asserts that the delay between his arraignment and trial violated the 180-day rule. The 180-day rule requires the prosecutor to make a good-faith effort to bring a prison inmate who has a pending criminal charge to trial within 180 days after the Department of Corrections delivers notice to the prosecutor of the inmate's imprisonment and requests disposition of the pending charge. MCL 780.131(1); *People v. Bradshaw*, 163 Mich App 500, 505; 415 NW2d 259 (1987). "[T]he statute applies only to those defendants who, at the time of trial, are currently serving in one of our state penal institutions, and not to individuals

awaiting trial in a county jail." *People v. McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). The purpose of the statute is to give defendant "an opportunity to have the sentence run concurrently consistent with the principle of law disfavoring accumulations of sentences." *Cleveland Williams, supra* at 252-253.

"This Court has held that time expended by a prosecutor to pursue an interlocutory appeal from an order of a trial court is not chargeable to the prosecutor." *Bradshaw, supra* at 505. The delay in the reinstatement of charges and commencement of trial were a result of the prosecutor's appeal of the district court's decision not to bind over defendant, and the time spent pursuing this appeal cannot be counted toward the 180-day time period. The prosecutor made a good-faith effort to bring this case to trial and the trial began within the statutory period. Defendant's argument lacks merit.

*Kelly*, 2007 WL 2118799 at *8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2] First, Petitioner is not entitled to habeas relief on any claim that the trial court violated Michigan's 180-day rule. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Thus, to the extent that Petitioner contends that Michigan's 180–day rule was violated, he is not entitled to relief. *See, e.g.*, *Burns v. Lafler*, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (denying habeas relief on similar claim).

Second, Petitioner fails to demonstrate a violation of his federal speedy trial rights. The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial. U.S. CONST. amend. VI. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). No

---

[2] The same result would be reached under a *de novo* standard of review.

- 22 -

single factor is determinative; rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. *Id.* at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009) (citation omitted). That being said, the length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, to trigger a speedy trial analysis, a defendant must allege that the interval between accusation and trial has crossed the line between ordinary delay and presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Courts have generally found delays of one year or more to be "presumptively prejudicial." *Id.* at 652, n.1.

In this case, all four factors weigh against Petitioner. First, the length of the delay was not presumptively prejudicial. While the time between Petitioner's arrest and arraignment on March 1, 2005 and the start of his trial on March 13, 2006 was just over one year, the time from when the district court dismissed the charges, the prosecution appealed, and the circuit court reinstated the charges does not count toward the speedy trial time period. *See United States v. Loud Hawk*, 474 U.S. 302, 310-11 (1986). The actual trial delay was thus closer to six months. Second, the reason for much of the delay was the aforementioned appeal. Third, Petitioner did not assert his speedy trial rights before the state trial court. Fourth, as explained by the Michigan Court of Appeals, Petitioner fails to show that he was substantially prejudiced by the delay. His conclusory allegations about an alibi witness and phone records are insufficient to establish prejudice. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *see also Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir.

- 23 -

2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review). Moreover, Petitioner was already incarcerated for other offenses at the time of the instant criminal proceedings. Petitioner fails to establish a violation of his federal speedy trial rights.

**F.**

Petitioner relatedly asserts that he is entitled to habeas relief due to extended pre-arrest delay (Habeas Claim X). Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief finding that Petitioner had failed to establish that he was prejudiced by the delay. The court explained:

> Defendant argues that the delay between the commission of the present offense and his arrest for these crimes constituted a denial of his right to procedural due process. We disagree. We review a challenge to prearrest delay *de novo*. *Cain, supra* at 108.

> The right to due process provides limited protection to individuals who have not been arrested. *People v. Adams*, 232 Mich App 128, 133; 591 NW2d 44 (1998), quoting *People v. Bisard*, 114 Mich App 784, 788; 319 NW2d 670 (1982). Charges against a defendant may be dismissed because of prearrest delay if there is "actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage." *People v. Crear*, 242 Mich App 158, 166; 618 NW2d 91 (2000). Substantial prejudice occurs when the delay meaningfully impairs a defendant's ability to defend against the charges. *Id*. To establish actual and substantial prejudice impairing his ability to defend himself, a defendant must first present evidence of prejudice. *Adams, supra* at 135, quoting *People v. Loyer*, 169 Mich App 105, 120; 425 NW2d 714 (1988). Once evidence of prejudice has been established, the prosecution has the burden of persuasion of showing the reasonableness of the delay. *Adams, supra* at 137. "[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 US 783, 796; 97 S Ct 2044; 52 L Ed 2d 752 (1977).

> Defendant argues that the delay in his arrest prevented him from obtaining phone records and producing an alibi witness. In particular, defendant also claims that his alibi witness, Mike McClendon, would have testified regarding Smith's threats and defendant's location at the time of the incident, but he has since died.

- 24 -

> However, defendant's allegations of prejudice resulting from pretrial delay are too speculative to justify reversing his conviction. Defendant fails to indicate the nature of these phone records or explain how they would have changed the outcome of the trial. Defendant also fails to specify what McClendon's testimony would have been. "Proof of 'actual and substantial' prejudice requires more than just generalized allegations." *Crear, supra* at 166. Defendant has failed to meet his burden of showing that he suffered actual and substantial prejudice by the delay in his arrest. His assertions of error lack merit.

*Kelly*, 2007 WL 2118799 at *10-11.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial. U.S. CONST. amend. VI. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits unjustified pre-indictment or pre-arrest delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Marion*, 404 U.S. 307, 324-26 (1971). To prevail on such a claim, a defendant must show substantial prejudice to his right to a fair trial and intent by the prosecution to gain a tactical advantage at trial. *Marion*, 404 U.S. at 324; *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992).

In this case, Petitioner fails to show that he was prejudiced by the delay between the incident and his arrest on the charges. His assertions about an alibi witness and phone records are speculative and conclusory in nature. Moreover, Petitioner fails to allege any facts or to otherwise establish that the prosecution delayed the charges in order to gain a tactical advantage at trial. The Michigan Court of Appeals' decision in this regard was reasonable. Habeas relief is not warranted on this claim.

## G.

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his right to be present at trial and to consult with counsel during trial (Habeas Claims XII, XXI,

- 25 -

XXII). Petitioner raised these claims on direct appeal and again on collateral review. The Michigan Court of Appeals denied relief, stating in relevant part:

> Defendant argues that the trial court improperly denied his right to be present at trial. We disagree. Defendant waived this issue by behaving in a disorderly fashion before trial, refusing to be quiet after multiple warnings, and affirmatively responding that he did not want to be present in the courtroom. "'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right.'" *Carines, supra* at 762 n 7, quoting *United States v. Olano*, 507 U.S. 725, 733; 113 S Ct 1770; 123 L. Ed. 2d 508 (1993). If a defendant waives his rights, rather than forfeits them, that waiver extinguishes any error, and he may not seek appellate review of a claimed deprivation of those rights. *People v. Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Because defendant intentionally relinquished his right to be present at trial, he has waived this claim of error and we need not consider it further.

*Kelly*, 2007 WL 2118799 at *11.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[3] A criminal defendant has a right to be physically present at every stage of trial. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). However, a "defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. 337, 343 (1970). Once lost, the right to be present can "be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

Petitioner's claims are belied by the record. The trial transcripts indicate that Petitioner was disruptive during jury selection on the first day of trial and was given multiple warnings to

---

[3] The same result would be reached under a *de novo* standard of review.

- 26 -

behave before the trial judge removed him from the courtroom. He was placed in another room with the ability to hear the proceedings. Trial Tr. Vol. I, pp. 4-13. After jury selection, the trial judge gave Petitioner the opportunity to return to the courtroom with proper behavior, but Petitioner refused to comply. *Id.* at pp. 96-98. On the second day of trial, when the trial judge asked Petitioner if he wanted to behave and return to the courtroom, he responded, "No." Trial Tr. Vol. II, p. 3. The record thus reveals that Petitioner was removed from the courtroom due to his disruptive behavior (but had the ability to hear the proceedings from another room) and that he was given multiple chances to modify his behavior and return to the courtroom, but he refused to do so. Given such circumstances, Petitioner fails to establish a violation of his constitutional rights. Habeas relief is not warranted on these claims.

## H.

Petitioner next asserts that he is entitled to habeas relief because the prosecutor suppressed evidence favorable to the defense (Habeas Claim XIII). Petitioner raised this claim on direct appeal. The Michigan Court of Appeals reviewed the claim for plain error and denied relief. The court explained in relevant part:

> "[T]he prosecutor has a duty to see that justice is done, not merely to convict." *People v. Florinchi*, 84 Mich App 128, 133; 269 NW2d 500 (1978). Accordingly, defendant is entitled to have all evidence bearing on his guilt or innocence that is within the prosecutor's control produced at trial. *Id.* at 133. A prosecutor violates a defendant's right to due process if he suppresses material evidence favorable to the defendant, even if she did not do so in bad faith. *Brady v. Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish that his due process right to access evidence presented by the prosecution was violated, a defendant must establish the following:
>
> > (1) that the state possessed evidence favorable to the defendant; (2) that [the defendant] did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome if the proceedings would have been

- 27 -

> different. [*People v. Lester*, 232 Mich App 262, 281-282; 591 NW2d 267 (1998) (citation omitted).]
>
> The prosecutor also has a duty to disclose any information that would materially affect the credibility of her witnesses. *Id.* at 281. "In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendant to the crime or where the likely effect on the witness' credibility would have undermined a critical element of the prosecutor's case." *Id.* at 282-283. Defendant alleges that the prosecutor possessed a tape seized from his home with a recording of Smith calling him after the incident and yelling at him for shooting her. However, defendant relies on a transcript from a motion hearing concerning a separate offense, in which the prosecutor, defense counsel, and judge in that case discussed whether the tape should be admitted. This transcript is not a part of the trial court record in this case, and defendant cannot expand the record on appeal. *People v. Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Accordingly, defendant fails to establish that the prosecutor suppressed evidence that would have been favorable to his defense.[FN3]
>
> [FN3]Regardless, defendant has not shown how this tape would have been favorable to his defense.

*Kelly*, 2007 WL 2118799 at *11.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To find a *Brady* violation, not only must the evidence be suppressed, it must be material and favorable to the defense. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432–36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to

- 28 -

produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). The petitioner bears the burden of establishing a *Brady* violation. *Id*.

Petitioner has not met his burden. Even assuming that such a recording exists, Petitioner was aware of the recording given his allegation that it was taken from his home. Nonetheless, even assuming that the recording was not disclosed to the defense, Petitioner fails to establish that it was exculpatory. Rather, it would appear to be inculpatory or, at the very least, it could have bolstered Charity Smith's version of events. Petitioner fails to establish a *Brady* violation. Habeas relief is not warranted on this claim.

## I.

Petitioner relatedly asserts that he is entitled to habeas relief because the prosecution failed to investigate and present facts and evidence showing "the whole transaction" (Habeas Claim XXIII). Petitioner first raised this specific issue on collateral review. The state trial court

- 29 -

denied relief under Michigan Court Rule 6.508(D)(2) and (3), and the appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A prosecutor does not have an affirmative duty to take action to discover information which it does not possess or to investigate information which might be favorable to the defense. *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010). Such actions are the function of defense counsel, not the prosecution. Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Habeas relief is not warranted.

## J.

Petitioner also asserts that he is entitled to habeas relief due to the ineffective assistance of trial counsel. Specifically, he asserts that trial counsel was ineffective for failing to investigate and prepare an alibi defense, for only meeting with him once before trial, for failing to advise him about his right to testify at trial, for failing to contest the bindover/reinstatement procedures or request an interlocutory appeal, for failing to object to the pre-arrest and trial delays, for failing to object to prosecutorial misconduct or request curative instructions, for failing to object to photographic line-up evidence, for failing to contest his removal from the courtroom and consult with him afterward, for failing to secure his presence or contest pre-trial proceedings, for failing to move for a directed verdict, for failing to obtain and investigate police reports filed by the victim prior to the shooting, for failing to request a continuance to locate and interview a new witness, for failing to investigate circumstances regarding the intent of the perpetrator, and for failing to seek dismissal of the charges based upon prosecutorial vindictiveness (Habeas Claims XIV, XVII, XVIII, XXIV, XXV, XXVI, XXVII, XVIII). Petitioner raised these claims on direct

appeal and collateral review. On direct appeal, the Michigan Court of Appeals ruled that the

claims lacked merit and denied relief. The court explained in relevant part:

> There is a strong presumption that defendant received effective assistance of counsel, and defendant bears the burden of proving that his counsel's actions did not constitute sound trial strategy. *Strickland, supra* at 689; *Mitchell, supra* at 156. To establish a claim of ineffective assistance of counsel, defendant must establish that his counsel made errors that were so serious that she was not functioning as the "counsel" guaranteed for defendant by the Sixth Amendment, and that these errors deprived defendant of a fair trial. *Strickland, supra* at 687; *Mitchell, supra* at 156. Defendant must also show that, but for trial counsel's errors, the outcome of the proceeding would have been different. *People v. Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994).
>
> First, defendant argues that his counsel was ineffective for failing to investigate, prepare, and present an alibi defense. Defendant alleges that Tracey Poteat, the mother of his son, could have testified that he was at her home at the time of the February 19, 2002, shooting. Defense counsel indicated that she had interviewed the only witness that defendant identified (presumably Poteat) and determined that her testimony was irrelevant to the case. This decision by defense counsel not to call Poteat as a witness constitutes trial strategy, and we will not substitute our judgment for that of counsel in matters of trial strategy. *People v. Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Accordingly, defense counsel's failure to investigate, prepare, and present an alibi defense did not constitute ineffective assistance of counsel.
>
> Next, defendant claims that his counsel was ineffective because she only met with him once before trial, for approximately five minutes. However, defense counsel noted on the record that before trial began, she met with defendant, interviewed the witness that defendant identified, and subpoenaed phone records for the numbers that defendant gave her, merely to find that the records no longer existed. Defense counsel has a duty to consult with a defendant regarding important decisions, such as the overall defense strategy, but this obligation "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 US 175, 187; 125 S Ct 551; 160 L Ed 2d 565 (2004), quoting *Taylor v. Illinois*, 484 US 400, 417-418; 108 S Ct 646; 98 L Ed 2d 798 (1988). Defendant failed to establish that his counsel did not fulfill her obligation to consult with him.
>
> Defendant also alleges that his counsel failed to advise him regarding his right to testify at trial. However, the record shows that defense counsel advised defendant of this right, and defendant told the court that he did not want to testify. Defendant's assertion of error lacks merit.
>
> Finally, defendant alleges numerous errors that have already been addressed, including his counsel's failure to challenge the reinstatement of the charges, the

> delay between the commission of the charged offense and his arrest, the 180-day rule violation, prosecutorial misconduct, and his removal from the courtroom, and his counsel's failure to secure defendant's presence at the arraignment and subsequent preliminary examination and to communicate with defendant after his removal from the courtroom. We previously concluded that defendant's arguments regarding these issues lack merit. "Trial counsel is not required to advocate a meritless position." *People v. Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Accordingly, defense counsel's performance did not fall below an objective standard of reasonableness, and defendant was not deprived of a fair trial.

*Kelly*, 2007 WL 2118799 at *12-13. On collateral review, the state trial court denied relief under Michigan Court Rule 6.508(D)(2) and (3) and the appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[4] The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial

---

[4]To the extent that it can be argued that the state courts did not address any of Petitioner's ineffective assistance of counsel claims, the Court notes that it would reach the same result under a *de novo* standard of review.

counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Petitioner claims that trial counsel was ineffective for failing to investigate and prepare his defense, for failing to obtain and investigate police reports filed by the victim prior to the shooting, for failing to request a continuance to locate and interview a new witness, and for failing to investigate circumstances regarding the intent of the perpetrator. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a

- 33 -

defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner fails to show that trial counsel erred in investigating his case and/or that he was prejudiced by counsel's conduct in this regard. Rather, the record indicates that trial counsel interviewed a potential alibi witness identified by Petitioner and decided that her testimony was not beneficial to the defense, requested phone records (which were unavailable), and took other actions to investigate the case and prepare a defense. Counsel's strategy was to argue that Petitioner did not commit the crime, to cite the lack of physical evidence linking him to the crime, and to challenge the prosecution's case and argue reasonable doubt. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

While Petitioner asserts that counsel failed to obtain police reports of the shooting, he offers no evidence to show that such records existed, that counsel did not review them, and/or that any such records would have benefitted his defense. As to counsel's alleged failure to seek a continuance to investigate a new witness (someone who was on a call with Chastity Smith when Petitioner called and threatened her) and failure to investigate the scene of the shooting, Petitioner fails to show that counsel erred or that he was prejudiced by counsel's conduct. Counsel may have reasonably determined that Smith's other caller would not provide evidence relevant to the shooting and/or would be harmful to the defense. Counsel may have also reasonably decided that an investigation of the scene was unnecessary because the circumstances of the shooting were sufficient to establish an intent to kill and because Petitioner's defense was that he did not commit the shooting, not that he lacked the intent to kill. As the Supreme Court has stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary. . . . Those decisions are due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). Moreover, Petitioner's claims regarding what counsel may have discovered with further investigation are purely speculative. As discussed *supra*, conclusory allegations are insufficient to justify habeas relief. Petitioner fails to establish that counsel was ineffective in investigating his case or that he was deprived of a substantial defense.

Petitioner relatedly claims that trial counsel was ineffective for only meeting with him once before trial. The record indicates that counsel met with Petitioner before trial and consulted with him during trial. The record further indicates that counsel reviewed the case, conducted some pre-trial investigation, questioned witnesses about their version of events, and advocated

- 35 -

on Petitioner's behalf. The mere fact that counsel may have spent little time with Petitioner prior to trial "is not enough under *Strickland*, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003); *accord Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same). Petitioner has not explained with specificity how additional meetings with counsel would have benefitted his defense. He thus fails to establish that counsel was ineffective.

Petitioner also claims that trial counsel was ineffective for failing to advise him about his right to testify at trial. This claim is belied by the record. *See* Trial Tr., Vol. II, p. 4. Petitioner fails to establish that counsel was ineffective in this regard.

Petitioner next claims that trial counsel was ineffective for failing to properly challenge or object to several matters before and during trial such as the bindover/reinstatement procedures, the pre-arrest and trial delays, the alleged instances of prosecutorial misconduct, and his removal from the courtroom and absence from proceedings. Given the state court's rulings and this Court's determination that those underlying claims lack merit, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct. Defense counsel cannot be deemed ineffective for failing to make a futile or meritless motion or objection. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Petitioner also claims that trial counsel was ineffective for failing to object to photographic lineup evidence admitted through one of the other acts witnesses. The evidence,

however, was admissible under state law and Petitioner fails to establish a basis for a successful objection. As noted, counsel cannot be deemed ineffective for failing to make a meritless objection. Moreover, even assuming that counsel erred, Petitioner fails to show that he was prejudiced by counsel's conduct. Even if the lineup evidence was excluded, the underlying other acts evidence was admitted at trial. Petitioner fails to establish that counsel was ineffective.

Petitioner further claims that trial counsel was ineffective for failing to move for a directed verdict. Given the evidence against Petitioner, including the victim's testimony about his threats and the circumstances of the shooting, his friend's testimony about his gun ownership, and the other acts evidence of his common plan, motive, and intent, there was sufficient circumstantial evidence to support Petitioner's convictions, let alone to submit the case to the jury. Consequently, any directed verdict motion would have been futile. As noted, counsel cannot be deemed ineffective for failing to make a futile or meritless motion. Petitioner fails to establish that counsel erred or that he was prejudiced by counsel's conduct.

Lastly, Petitioner claims that trial counsel was ineffective for failing to seek dismissal of the charges based upon prosecutorial vindictiveness. Petitioner, however, fails to allege any facts to show that the prosecutor's actions in charging him, appealing the district court's dismissal of the charges, or pursuing the case following reinstatement of the charges was due to harassment or vindictiveness. In fact, the Michigan Court of Appeals ruled that prosecutor's appeal and the reinstatement of the charges was not harassment. Because the prosecutor acted within the bounds of professional discretion, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct in this regard. Petitioner thus fails to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

**K.**

Petitioner also asserts that he is entitled to habeas relief because the state trial court failed to provide a full record for appellate review (Habeas Claim XV). Petitioner first raised this claim on collateral review. The state trial court denied relief finding that the claim lacked merit and the state appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[5] Petitioner fails to establish that he and/or appellate counsel were not provided with the transcripts or other materials necessary for appellate review in the state courts. To the contrary, the state court record indicates that appellate counsel and Petitioner cited to the trial record and raised numerous claims for relief throughout the post-conviction proceedings. Habeas relief is not warranted on this claim.

**L.**

Petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to provide the Michigan Court of Appeals with sufficient facts on appeal, for failing to provide him with transcripts, and for failing to raise the claims that he raised on collateral review on direct appeal in the state courts (Habeas Claim XVI, XVII, XVIII). Petitioner raised this claim on collateral review. The state trial court denied relief finding that the claim lacked merit and the state appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[6] As discussed *supra*, in order to establish

---

[5] The same result would be reached under a *de novo* standard of review.

[6] The same result would be reached under a *de novo* standard of review.

ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

In this case, Petitioner fails to establish that appellate counsel failed to sufficiently brief the Michigan Court of Appeals on direct appeal or that he failed to provide Petitioner with transcripts and/or that either of those alleged deficiencies prejudiced his right to a fair appeal. Rather, the record indicates that counsel raised several issues on direct appeal and that Petitioner

raised additional issues on direct appeal and on collateral review in the state courts. Petitioner fails to establish that appellate counsel was ineffective as to such matters.

Petitioner also fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including evidentiary claims and ineffective assistance of counsel claims. None of the other claims subsequently raised by Petitioner are "dead-bang winners." Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct because the underlying claims lack merit. *See* discussion *supra*. Habeas relief is not warranted.

### M.

Petitioner asserts that he is entitled to habeas relief because the trial court failed to advise him of the risks of self-representation, the minimum/maximum sentence, the charged offense, the opportunity to consult with counsel after his request for substitute counsel was denied, and the continued right to counsel's assistance (Habeas Claim XIX). Petitioner first raised this claim on collateral review. The state trial court denied relief under Michigan Court Rule 6.508(D)(2) and (3) and the appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As discussed *supra*, the Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel, *Powell*, 287 U.S. at 53; and gives an indigent criminal defendant the right to the assistance of court-appointed counsel. *Gideon*, 372 U.S. at 343. A waiver of the right to counsel must be voluntary, knowing and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Faretta v. California*, 422 U.S. 806, 835 (1975); *Jones v. Jamrog*, 414 F.3d 585, 593 (6th Cir. 2005). The Sixth Amendment also grants a

criminal defendant the right to self-representation, if he voluntarily and intelligently elects to do so. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 153 (2000); *Faretta*, 422 U.S. at 819. A criminal defendant who seeks to proceed *pro se* must generally be aware of the risks of self-representation so that "he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. The right to counsel and the right to defend oneself are viewed as correlative rights in that waiver of one necessarily constitutes an assertion of the other. *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970); *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2005).

In this case, the record indicates that Petitioner requested substitute counsel at the start of trial. He never, however, waived his right to counsel or asked to represent himself at trial. Consequently, the state trial court did not err by not advising him of his right of self-representation or the attendant risks of such self-representation. In fact, the Sixth Circuit has specifically ruled that there is no constitutional right to be informed of the right of self-representation. *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994); *accord Munkus v. Furlong*, 170 F.3d 980, 984 (10th Cir. 1999). Petitioner fails to establish a violation of his constitutional rights in this regard.

Additionally, Petitioner does not show that the trial court did not sufficiently inform him of the minimum and maximum sentences he faced or the charges against him, or that he was denied the opportunity to consult with counsel or the continued assistance of counsel. Rather, the record reveals that Petitioner was informed of the charges against him at his preliminary examinations, *see* 3/17/05 Prelim Ex. Tr., p. 3; 11/29/95 Prelim. Ex. Tr, p. 3-4, that he was present at his arraignment on December 9, 2005, Wayne Co. Dkt.; Sent. Tr. p. 6, and that he had opportunities to consult with counsel (but chose not to do so) during trial and had the assistance

- 41 -

of counsel before and during trial, see 3/17/05 & 11/29/05 Prelim. Ex.; 2/24/06 Motion Hrg.; Trial Tr. Vol. I, p. 3, 4-13, 96-98, 99; Vol. II, p. 3-4; *see also* discussion *supra*. Petitioner's assertions to the contrary are conclusory and belied by the record. Habeas relief is not warranted on this claim.

## N.

Petitioner asserts that he is entitled to habeas relief because the trial court denied his motion for new trial without conducting a *Ginther* hearing (Habeas Claim XXIX). Petitioner first raised this claim on collateral review. The state trial court denied relief under Michigan Court Rule 6.508(D)(2) and (3) and the appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has held that states have no constitutional obligation to provide post-conviction remedies. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Consequently, the Sixth Circuit has consistently held that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (citing *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986), in ruling that federal habeas proceedings cannot be used to challenge errors or deficiencies in state post-conviction proceedings); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief"). There is also no clearly-established Supreme Court ruling that recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on direct appeal. *Hayes v. Prelesnik*, 193 F. App'x 577, 584-85 (6th Cir. 2006). Petitioner thus fails to state a

claim upon which habeas relief may be granted as to this issue. Habeas relief is not warranted on this claim.

## O.

Lastly, Petitioner asserts that he is entitled to habeas relief due to the cumulative effect of the alleged errors at trial (Habeas Claim XXX). Petitioner first raised this claim on collateral review. The state trial court denied relief finding that the claim lacked merit and the appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Furthermore, the Sixth Circuit has ruled that such a cumulative error claim is not cognizable on habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable and citing *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010), and *Moore, supra*). Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Moreover, given that none of Petitioner's habeas claims have merit, he cannot establish entitlement to relief based upon cumulative error. Habeas relief is not warranted.

## V.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies a habeas claim on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Leave to proceed *in forma pauperis* on appeal will also be denied as an appeal cannot be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24 (a).

## VI.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: March 25, 2015                                      s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Bernard Kelly #526389 at Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036 by first class U.S. mail on March 25, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON